RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0412p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 05-2195

KENNETH MICHAEL KENNY,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 03-20025—David M. Lawson, District Judge.

Argued: April 19, 2007

Decided and Filed: October 10, 2007

Before: DAUGHTREY and GIBBONS, Circuit Judges; SCHWARZER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Martin J. Beres, LAW OFFICES OF MARTIN J. BERES, Clinton Township, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Martin J. Beres, LAW OFFICES OF MARTIN J. BERES, Clinton Township, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

WILLIAM W SCHWARZER, District Judge. Kenneth Michael Kenny appeals his conviction on one count of being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). On appeal he contends that the district court erred in denying his motion to suppress evidence found in a search of his residence at 4970 North Finley Lake Road and in denying his motion for a new trial based on newly discovered evidence that the restoration of his civil rights precludes application of section 922(g) to him. Finding his contentions to lack merit, we affirm.

---

[*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

**FACTS AND PROCEDURAL HISTORY**

On February 6, 2003, police executed a search warrant at 530 North Coolidge Street in Harrison, Michigan. In a pole barn on the property, officers found and arrested Kenny and his son, Christopher Perry.[1] In the barn, officers found a partitioned area containing a methamphetamine manufacturing lab. Officers also discovered some sixty weapons on the property. On the next day, Detective David Stoppa obtained and executed a search warrant for Kenny's residence at 4947 North Finley Lake Road. The supporting affidavit incorporated the information contained in the affidavit that supported the search at 530 North Coolidge Street and in addition contained the results of the search of that property. Among other things, the affidavit stated that, according to Stoppa's named informant, Kenny was associated with Joseph Kozma, the informant's source of methamphetamine, and had been said by Kozma to be "cooking" methamphetamine in the pole barn lab. The search of Kenny's residence uncovered several firearms and paraphernalia for the manufacture of methamphetamine.

The district court denied Kenny's pretrial motion to suppress evidence seized at his residence. The court ruled that

> the residence of an individual who is actively involved in drug activity, manufacturing and trafficking, is fair game and probable cause exists and is shown by a finding that the individual is actively involved in that conduct, and that the individual lives in that house.

The jury returned a guilty verdict against Kenny on the gun count on May 4, 2004. Sentencing was adjourned pending the decision in *United States v. Booker*, 543 U.S. 220 (2005). On January 21, 2005, Kenny moved for a new trial based on newly discovered evidence. The district judge, after a hearing, denied the motion, *United States v. Kenny*, 375 F. Supp. 2d 622 (E.D. Mich. 2005), and on August 24, 2005, sentenced Kenny to thirty-six months imprisonment. Kenny timely appealed.

**DISCUSSION**

**I.     THE STOPPA AFFIDAVIT ESTABLISHED PROBABLE CAUSE TO SEARCH KENNY'S RESIDENCE**

"When reviewing decisions on motions to suppress, this court will uphold the factual findings of the district court unless clearly erroneous, while legal conclusions are reviewed de novo." *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996). The court views the evidence "in the light most likely to support the district court's decision." *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir. 1992) (internal quotations omitted). The magistrate judge's decision to issue the warrant is given great deference, with this court determining whether the magistrate judge "had a substantial basis for finding that the affidavit established" a "'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (per curiam). This requires "a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 590, 594 (6th Cir. 2004)(en banc). "In other words, the affidavit must suggest 'that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of property is suspected of crime.'" *United States v. McPhearson,* 469 F.3d 518, 524 (6th Cir. 2006) (quoting *Zurcher v. Stanford Daily,* 426 U.S. 547, 556 (1978)).

---

[1]This panel has disposed of Perry's claims in a separate, unpublished opinion.

The affidavit of Detective Stoppa, an officer with experience and training in drug trafficking investigations, stated that Kenny had been arrested inside a building which contained a methamphetamine manufacturing lab. He and Perry were the only individuals in the building at the time and appeared to be in charge of the functioning of the lab. On an earlier occasion, Stoppa's informant, while at the 530 North Coolidge Street property, had been told by Kozma, an associate of Kenny in the distribution of methamphetamine, that Kenny was not coming out of the pole barn because he was "cooking"—which she understood to mean that he was making methamphetamine. As a result of the search, a methamphetamine lab was discovered along with a kilo of methamphetamine and a large quantity of components and ingredients. Based on his experience, training and information, Stoppa asserted that he had reasonable cause to believe that the search of the described premises (the residence) would reveal evidence of the outlined crimes.[2]

In *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002), we held, following a long line of precedents, that a sufficient nexus existed to search the residence of a known drug dealer after he had been arrested for possession of cocaine. As we explained in *McPhearson*, the inference that a drug dealer keeps evidence of wrongdoing in his residence can be drawn permissibly if, as in *Miggins*, the affidavit had "the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes." *McPhearson*, 469 F.3d at 524. In *McPhearson*, the police obtained a warrant to search defendant's residence after they found crack on his person in a search incident to his arrest for assault. *Id.* at 521. At the time of the arrest, defendant was standing on the threshold of his residence. *Id.* These were the only facts in the affidavit, and the court found that "[i]n the absence of any facts connecting McPhearson to drug trafficking, the affidavit in this case cannot support the inference that evidence of wrongdoing would be found in McPhearson's home because drugs were found on his person." *Id.* at 525.

Kenny contends that *Miggins* does not support the search of his residence. He argues that he was not a "known drug dealer," never having been arrested or convicted of a drug offense, and that he was never observed in drug trafficking.

There was substantial evidence, however, that Kenny was engaged in manufacturing methamphetamine. He was arrested at the site of the methamphetamine lab and the location of a large quantity of methamphetamine and ingredients for its manufacture under circumstances suggesting he was responsible for the operation. The informant related that Kenny was engaged in cooking methamphetamine and that he was associated with Kozma, who had supplied her with methamphetamine. The search at 530 North Coolidge Street corroborated much of her information, some of which was against her penal interest. *See United States v. Miller*, 314 F.3d 265, 270-71 (6th Cir. 2002) (noting that first-time informants' information can be reliable when they are named and they provide detailed information); *United States v. Barone*, 584 F.2d 118, 122 (6th Cir. 1978) ("That some of the statements necessarily were against the penal interest of the informant weighs heavily in support of his reliability and is, we have held, a significant, and sometimes conclusive, reason for crediting the statements of an informant." (quotation omitted)).

That probable cause existed to believe that Kenny was engaged in the manufacture of methamphetamine is beyond dispute. We think that the rationale underlying the *Miggins* line of cases is not limited to defendants engaged in the immediate distribution of drugs. The manufacturer is only a step away from dealing in his product. Indeed, the prohibition against drug trafficking extends to manufacturing. *See, e.g.*, 18 U.S.C. §§ 924(c)(2) & 929(a)(2) (defining drug trafficking as including all felonies punishable under 21 U.S.C. § 801 *et seq.*, which includes the manufacture and/or distribution of controlled substances). Moreover a manufacturer's residence is as likely to

---

[2]Kenny does not dispute that he resides at 4970 North Finley Lake Road.

contain drug paraphernalia such as recipes, ingredients, and records of sales as that of a dealer. We conclude that the search of Kenny's residence was valid.

## II.  KENNY'S OTHER CLAIMS

Kenny contends that his conviction for being a felon in possession of a firearm is improper because his civil rights were restored by operation of Michigan law and he therefore was not a prohibited person under 18 U.S.C. § 921(a)(20). Kenny first raised this issue in a motion for a new trial filed nine months after his conviction. Under Federal Rule of Criminal Procedure 33, this motion must be based on newly discovered evidence, and Kenny has the burden of demonstrating that "(1) the evidence was discovered after trial, (2) it could not have been discovered earlier with due diligence, (3) it is material and not merely cumulative or impeaching, and (4) it would likely produce an acquittal if the case was retried." *United States v. Turns*, 198 F.3d 584, 586-87 (6th Cir. 2000). Kenny concedes, as the district court found, that "the restoration of [his] civil rights was not 'newly discovered' within the meaning of the controlling law." The district court further found that it did not believe the evidence would result in an acquittal. *Kenny*, 375 F. Supp. 2d at 624. Because we agree with the court's well-reasoned analysis, we need not discuss this issue further.

As for Kenny's ineffective assistance of counsel claim, this court will generally not review such claims on direct appeal. *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997). There is no reason in this case to depart from this practice.

For the reasons stated, the judgment is **AFFIRMED**.