**UNITED STATES of America,
Plaintiff,**

v.

**Vincent L. CROCKETT, Defendant.**

No. 07–20477.

United States District Court,
E.D. Michigan,
Southern Division.

April 25, 2008.

Michael Bullotta, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

DAVID M. LAWSON, District Judge.

Defendant Vincent Crockett, a Detroit Police Officer accused of stealing cocaine from the police evidence room on March 27, 2007, challenges the constitutionality of the search and seizure of evidence from the his home pursuant to a search warrant. He alleges that the warrant's supporting affidavit did not establish probable cause to search his home and seize bank records and approximately $7,000 in United States currency. The motion was argued by the parties on January 17, 2008, after which the parties were given leave to file supplemental briefs. The Court now finds that the search warrant affidavit does not provide sufficient facts from which probable cause could be found that contraband or evidence of a crime would be located at the defendant's residence. However, the government agents' reliance on the search warrant was made in good faith, which precludes the application of the exclusionary rule in this case. Therefore, the motion to suppress the evidence will be denied.

## I.

The defendant, Vincent Crockett, was an officer for the Detroit Police Department. He was paid an annual salary of $48,500. In July 2005, the Detroit Police Department seized a substance weighing over six kilograms that was tested and found to be cocaine. This cocaine was given the identification number NO1906205 and stored in an evidence locker. On March 27, 2007, the defendant signed out the cocaine, presumably to take to the laboratory for further analysis. On April 25, 2007, the defendant made cash deposits of over $35,000 into his money market account.

In July 2007, other Detroit police officers attempted to locate the cocaine but were unable to do so. In their search for the cocaine, they noted that the defendant was the last person to sign it out of the evidence room. When pressed for an explanation, the defendant stated that the cocaine was still at the laboratory. On July 13, 2007, the defendant brought a substance back to the evidence room in evidence bag NO 1906205. The substance was retested and determined to no longer be cocaine, but a starch component. The laboratory technician who originally had tested the cocaine stated that the packaging of the substance was different than he remembered, and it appeared that someone had forged his initials on the packaging.

Relying on the above information, on July 18, 2007, FBI special agent Michael Haynie submitted an affidavit for a search warrant to a United States Magistrate Judge seeking authority to search the defendant's home at 43112 Providence Lane, Canton, Michigan. The warrant sought the seizure of narcotics ledgers, currency

derived from the sale of drugs, evidence of travel, weapons, indicia of ownership of location, photographs of conspirators, address and telephone books, electronic communication devices, bank account records, controlled substances, Detroit Police Department packaging tape, evidence logs, corn starch, other items that may have been stolen from DPD. The affidavit set forth the facts noted above, which gave rise to the suspicion that Crockett had stolen the cocaine from the police evidence room and replaced it with a corn starch substance. As to whether evidence of this wrongdoing would be located in Crockett's townhouse, the affidavit contained only the following:

> Detroit Police Department records confirm that CROCKETT currently resides at the Subject Premises. I have debriefed individuals in the Detroit area in my current capacity as an FBI Special Agent, and have learned that the going rate per kilogram of cocaine is approximately $20,000. Thus, the six kilograms of cocaine, if sold wholesale, would have yielded approximately $120,000. It is my belief, based on my experience that narcotics traffickers often keep narcotics and proceeds at their residences for extended periods of time. Therefore, I believe that there is probable cause that cocaine and or cocaine proceeds will be located at the Subject Premises. Additionally, I believe that there is probable cause that other items associated with narcotics trafficking, including those described in paragraph 4 above, will be found at the Subject Premises.

Def.'s Mot. to Suppress, Ex. A, Att. B, Haynie Aff. ¶ 11.

The search warrant was issued and executed on July 18, 2007. Apparently the search did not turn up any drugs, but the agents seized $2,750 in cash found at the residence. The agents also found bank account records, and the agents also seized $7,764.93 from six bank accounts at JP Morgan Chase bank.

Vincent Crockett was charged with possession with intent to distribute approximately six kilograms of cocaine and embezzlement of property from the Detroit Police Department. Count I charges the defendant with possession with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), and identifies the March 27, 2007 theft of six kilograms of cocaine. Count II of the indictment charges embezzlement by an agent of a local government agency that receives federal funds, in violation of 18 U.S.C. § 666(a). Count III seeks criminal forfeiture of property derived from the illegal conduct charged in Counts I and II. The defendant has moved to suppress the evidence obtained at his residence.

## II.

The defendant does not contest the proposition that the search warrant affidavit establishes probable cause that he was involved in wrongdoing. Rather, he contends that the affidavit contains no information justifying the conclusion that any contraband or evidence would be found at his home, which is the place to be searched, according to the warrant. The government counters by citing a line a cases in which the Sixth Circuit has upheld warrants to search the homes of known drug dealers when the supporting affidavits contain language that the affiant, through experience, has learned the habits of drug dealers and knows they frequently keep drugs and records of drug sales in the places where they live.

■■■ Under the command of the Fourth Amendment, applicable to the States as incorporated into the Fourteenth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see Mapp v. Ohio,* 367 U.S. 643, 654–55, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The test for probable cause calls for an assessment of whether there is "a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991) (quoting *United States v. Loggins,* 777 F.2d 336, 338 (6th Cir. 1985)). A magistrate properly reaches this conclusion only when the warrant affidavit sets forth sufficient facts that provide a "substantial basis" for concluding that "a search would uncover evidence of wrongdoing." *United States v. Sonagere,* 30 F.3d 51, 53 (6th Cir.1994) (quoting *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). As the Sixth Circuit has explained, the concept of probable cause is not easily reducible to a simple formula:

> Probable cause is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. This determination does not lend itself to the application of rigid legal rules.... Rather, the probable cause standard is a practical nontechnical conception wherein we deal with probabilities which are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Stated otherwise, probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.

*United States v. King,* 227 F.3d 732, 739 (6th Cir.2000) (citations omitted). To encourage law enforcement officers to seek warrants, the Supreme Court has counseled that in close calls, doubtful warrants should be upheld. *Gates,* 462 U.S. at 237 n. 10, 103 S.Ct. 2317. And " 'reviewing courts are to accord the magistrate's determination 'great deference.' " *United States v. Allen,* 211 F.3d 970, 973 (6th Cir.2000) (en banc) (quoting *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

As the defendant properly argues, "[t]here must ... be a 'nexus between the place to be searched and the evidence sought.' " *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir.2004) (en banc) (quoting *United States v. Van Shutters,* 163 F.3d 331, 336–37 (6th Cir.1998)). But as the government correctly notes, the Sixth Circuit has decided several cases upholding search warrants for the homes of known drug dealers and manufacturers based on the logical premise that incriminating evidence is likely to be found at the residences of drug dealers when there is probable cause to believe that an individual is a drug trafficker (and not merely in possession of controlled substance). *United States v. Kenny,* 505 F.3d 458, 461 (6th Cir.2007) (upholding search of residence based on probable cause that the defendant was involved in the manufacture of a controlled substance in another location, and noting that "In *United States v. Miggins,* 302 F.3d 384, 393–94 (6th Cir.2002), we held, following a long line of precedents, that a sufficient nexus existed to search the residence of a known drug dealer after he had been arrested for possession of cocaine."); *United States v. Miggins,* 302 F.3d 384, 393–94 (6th Cir.2002) (collecting cases); *United States v. Blair,* 214 F.3d 690, 696 (6th Cir.2000) (" '[i]n the case of drug dealers, evidence is likely to be found where the dealers live' ") (quoting *United States v. Jones,* 159 F.3d 969, 975 (6th Cir.1998)); *see also United States v.*

*Yates*, 132 F.Supp.2d 559, 564–65 (E.D.Mich.2001).

However, following the injunction that the probable cause determination cannot be "reduced to a neat set of legal rules," *King*, 227 F.3d at 739, the court has stopped short of establishing a categorical rule that an arrest of a known drug dealer *ipso facto* justifies the search of his home. *See United States v. Frazier*, 423 F.3d 526, 532–33 (6th Cir.2005) (holding that "[w]here, as here, the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants (none of whom witnessed illegal activity on the premises of the proposed search), the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence"). Even in the cases cited above, there was evidence in addition to the defendant's status as a drug dealer that pointed to a conclusion that contraband would likely be found in the residence. For instance, in *United States v. Jones*, 159 F.3d 969, 973–74 (6th Cir.1998), the court found the affidavit to be sufficient where the defendant had sold drugs to an informant, drug transactions were both overheard and observed taking place on the defendant's property outside of his residence, even though no evidence indicated that any activity actually occurred inside the defendant's residence, and the affiant claimed that through knowledge and experience, he could expect to find drug-related materials inside. In *United States v. Blair*, 214 F.3d 690, 696 (6th Cir.2000), a federal agent obtained a warrant to search the defendants' residence for records of money laundering upon a showing that the defendants were operating a prostitution ring, they sold narcotics to the prostitutes and their customers, one of the defendants was listed under a false name as a subscriber for electric service for the prostitution houses, that defendant had filed income tax returns using that same false name, and the officer affiant had stated that in his professional opinion, drug dealers usually keep such financial records and other essential materials at their homes.

In *Frazier*, the court of appeals distinguished *Miggins*, *Blair*, *Jones*, and *United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir.1996), stating "None of these cases, however, supports the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *Id.* at 533. The court rejected the idea that the affidavit was sufficient to establish probable cause in that case because it did not tie the evidence sought to the place searched, noting that none of the informants from whom the information was received "witnessed illegal activity on the premises of the proposed search." *Ibid.* The Court cited *United States v. Savoca*, 761 F.2d 292, 295 (6th Cir.1985), explaining that the "inference that bank robbers tend to conceal evidence in motel rooms, standing alone, is insufficient to support the search of two bank robbers' hotel room." *Ibid.*

■ In *United States v. McPhearson*, 469 F.3d 518(6th Cir.2006), the court reiterated the idea that some nexus beyond the allegation of drug dealing alone is necessary to justify the search of a residence. The court explained:

> In some instances, even the fact that the residences to be searched were occupied by known drug dealers is insufficient to establish the nexus between the residences and criminal activity. In *United States v. Frazier*, we wrote that our case law does not "support [ ] the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found

in his home. Where ... the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants ..., the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *Frazier*, 423 F.3d at 533. Thus, an allegation of drug dealing based on information from an untested confidential informant is insufficient to establish probable cause to search the alleged drug dealer's home. However, where the allegation of drug dealing is coupled with independently corroborated information from police officers, it may be sufficient to establish probable cause. *See, e.g., United States v. Miggins*, 302 F.3d 384, 393–94 (6th Cir.2002). Whether probable cause can be established by an allegation of drug dealing is irrelevant to our resolution of this case, however. The allegation of drug dealing was absent from the affidavit supporting the warrant in this case, which presents a probable cause determination based on an even looser connection between the residence and the suspected criminal activity.

*McPhearson*, 469 F.3d at 524 n. 3.

The cases allowing searches of drug dealers' homes generally rely on evidence in the affidavits that the defendant was involved in an ongoing enterprise rather than a discrete transaction. For instance, in *Kenny*, the affidavit established that the defendant was involved in manufacturing a large quantity of methamphetamine, which the Court noted was only a step away from distribution. 505 F.3d at 461–62. Although the court of appeals is silent as this point, there was a witness who had purchased the drugs from the defendant over a period of four months, suggesting an ongoing operation. In *Blair*, the defendant was accused of *ongoing* drug trafficking related to selling drugs to prostitutes who worked for the defendant for approximately eight years. *Blair*, 214 F.3d at 694. In *Miggins*, the defendant had been convicted of "numerous cocaine charges," suggesting that the defendant was "involved in drug trafficking." *Miggins*, 302 F.3d at 393. And in *United States v. Newton*, 389 F.3d 631 (6th Cir.2004), *vacated for reconsideration on other grounds*, 546 U.S. 803, 126 S.Ct. 280, 163 L.Ed.2d 35 (2005), the court found that the defendant was "a drug dealer with *continuing and ongoing* operations." *Id.* at 635 (emphasis added). None of these features is present in this case.

In addition, the Sixth Circuit has held that an officer's "training and experience" alone will not provide the particularized data necessary to support a conclusion that evidence is likely to be found in a particular place. *See United States v. Schultz*, 14 F.3d 1093 (6th Cir.1994). In *Schultz*, the officer sought warrants for both a safe deposit box and an apartment. Although sufficient evidence existed to search the apartment given the number of phone calls placed to others from the apartment to facilitate drug sales, the safe deposit boxes were viewed differently:

> Officer Ideker had not made any material connection between the bank and any criminal activity. Star Bank employees did not report any illegal activities related to either the loan or the safe deposit boxes, and Ideker had no other information connecting them to any illegal activity. In his affidavit for the first warrant, the only connection Ideker made was that, "Based on his training and experience, [he] believe[d] ... that it is not uncommon for the records, etc. of such [drug] distribution to be maintained in bank safe deposit boxes."

While an officer's "training and experience" may be considered in determining

probable cause, *see, e.g., Texas v. Brown*, 460 U.S. 730, 742–43, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *U.S. v. Martin*, 920 F.2d 393, 399 (6th Cir.1990), it cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity. Officer Ideker did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the first warrant should not have been issued. To find otherwise would be to invite general warrants authorizing searches of *any* property owned, rented, or otherwise used by a criminal suspect—just the type of broad warrant the Fourth Amendment was designed to foreclose.

*Id.* at 1097–98.

■ The affidavit in this case contains no facts suggesting that illegal activity occurred at the defendant's residence, or that the defendant was involved in a continuous and ongoing operation at his residence or anywhere else, or even that the defendant returned to the residence after handling the cocaine from the evidence room. The FBI agent recited his conclusion that "narcotics traffickers often keep narcotics and proceeds at their residences for extended periods of time." Def.'s Mot. to Suppress, Ex. A, Att. B, Haynie Aff. ¶ 11. But there is no information set forth that tends to establish that Crockett was a known narcotics trafficker. Rather, the affidavit proves only that Crockett is a thief, and he may have attempted to "fence" some of the stolen cocaine. Even if one were to conclude that the money deposited in his money market account represented proceeds from the sale, and even if one were to surmise that the amount of the proceeds suggested only a partial sale, there is no evidence of what Crockett did with the rest of the drugs,

and there certainly is no evidence that the drugs or records of the transactions were in his townhouse. Such assertion was nothing "more than a guess" and "it cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the [townhouse] and any criminal activity." *Schultz*, 14 F.3d at 1097.

For these reasons, the Court must conclude that the affidavit in support of the search warrant does not establish "a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in" the location sought to be searched. *Davidson*, 936 F.2d at 859. The search warrant, therefore, was issued in violation of the Fourth Amendment.

■■ However, even where the warrant was not supported by probable cause, the evidence obtained need not be suppressed when it was " 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.' " *United States v. Hython*, 443 F.3d 480, 484 (6th Cir.2006) (quoting *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). " '[T]he relevant question is whether the officer reasonably believed that the warrant was properly issued, not whether probable cause existed in fact.' " *Id.* at 487 (quoting *United States v. Laughton*, 409 F.3d 744, 752 (6th Cir.2005)). The good faith exception does not apply in four situations:

(1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was

nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*Id.* at 484 (citing *Leon*, 468 U.S. at 923, 104 S.Ct. 3405). The Court finds that none of those circumstances exists in this case.

█ The defendant has not claimed that the magistrate was misled, acted as a rubber stamp for the police, or that the affidavit was nothing more than "bare bones." Rather, the defendant focuses on the fourth possibility, claiming that the agents unreasonably relied on the search warrant because it was facially deficient. However, in cases where the nexus between contraband likely possessed by the defendant and the defendant's household has been lacking, the court of appeals has found the question to be sufficiently close to warrant a finding of good faith. Such is the case here.

In *United States v. Frazier*, for example, the Sixth Circuit found that the search warrant was not supported by probable cause because there was an insufficient nexus between the defendant's alleged conduct and his residence. The Court nevertheless found that the *Leon* exception applied and permitted the evidence to be introduced. The Court summarized Sixth Circuit precedent on this point as follows:

> For example, we held in [*United States v.*] *Van Shutters*, 163 F.3d at 336 [(6th Cir.1998) ], that an officer relied in good faith on a warrant where the affidavit described the residence and the suspect's criminal scheme but connected the place to the illegal activity only by stating that the residence "was available" to the suspect. In *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994), we held that an officer reasonably relied on a warrant authorizing the search of a bank safety deposit box where the affidavit underlying the warrant connected the box and the defendant's drug trafficking only by stating that the officer's training and experience led him to believe that evidence would be located there. And in *Savoca*, we held that, in light of a Sixth Circuit case which says that bank robbers often conceal evidence of their crimes in public and private places, an officer's reliance on a warrant to search a hotel room was reasonable when affidavit underlying the warrant connected the hotel room to a bank robbery only by stating that the robbers were seen in the room on two prior occasions. [*United States v. Savoca,*] 761 F.2d at 297–98 [(6th Cir.1985) ].

*Frazier*, 423 F.3d at 536–37.

Similarly, in this case, the affidavit provides probable cause that the defendant stole narcotics and was selling the stolen cocaine. The affidavit is silent to the connection between the defendant and the defendant's residence, except that the officer stated his "belief, based on . . . experience" that drugs or proceeds would be in the home. Although the affidavit is insufficient, it is not so facially defective that the agents' reliance on it and the search warrant is rendered objectively unreasonable. As a consequence, the exception to the exclusionary rule established by *United States v. Leon* applies to this case.

### III.

Although the search warrant in this case was not issued upon probable cause to believe that evidence of the crime would be

found at the defendant's residence, the agents relied on the warrant in good faith.

Accordingly, the defendant's motion to suppress evidence [dkt # 11] is **DENIED.**