RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

No. 17-4245

ERIK MCCOY; DERRICK HEARD,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
Nos. 1:17-cr-00029-1–2—Michael R. Barrett, District Judge.

Argued: July 30, 2018

Decided and Filed: September 20, 2018

Before: GUY, BATCHELDER, and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** C. Mitchell Hendy, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellant. James E. Kolenich, KOLENICH LAW OFFICE, Cincinnati, Ohio, for Appellee McCoy. Travis T. Dunnington, RION, RION, & RION, L.P.A., INC., Dayton, Ohio, for Appellee Heard. **ON BRIEF:** C. Mitchell Hendy, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellant. James E. Kolenich, KOLENICH LAW OFFICE, Cincinnati, Ohio, for Appellee McCoy. Jon Paul Rion, RION, RION, & RION, L.P.A., INC., Dayton, Ohio, for Appellee Heard.

───────────────

## OPINION

───────────────

JOHN K. BUSH, Circuit Judge. Police officers obtained a warrant, searched defendants' home, and found over 2,000 grams of heroin, marijuana, drug-distribution paraphernalia, and a

large amount of cash.  Despite the search's having been conducted under a judge-issued warrant, the district court suppressed the evidence, holding that because the warrant application so failed to connect defendants' home with drug-trafficking activity, no reasonable officer could have relied on the warrant.  The government appeals and argues that the police officers acted in good-faith reliance on the warrant, and so the evidence should be admissible against defendants.

We agree with the government.  The police officers' warrant application established enough of a basis to believe that at least one of the defendants was engaged in a continual, ongoing drug-trafficking operation and that therefore drug-related contraband was likely to be found in his home.  Thus, we reverse the district court's order suppressing the evidence.

I.

In fall 2016, officers of the Cincinnati Police Department began investigating a drug-trafficking lead.  The lead came from a confidential informant's[1] tip that defendants Erik McCoy and Derrick Heard (and their associate, Vincent Brown) were selling marijuana from two adjacent stores on Glenway Avenue.  The informant reported that McCoy and Heard lived together in a home located at 10515 Hadley Road and that McCoy and Brown worked at the Glenway Avenue stores.  The informant relayed having seen McCoy, Heard, and Brown in possession of marijuana and having observed marijuana and guns inside the 10515 Hadley Road home.

Based on the informant's information, Officer Longworth began surveilling the Glenway Avenue stores.  Over several days, he watched McCoy, Heard, and Brown come and go.  He noted a "large amount of foot traffic [that he considered] consistent with drug trafficking."  R.34-2, Affidavit for Search Warrant, Page ID# 135.  And he discovered that McCoy and Brown had drug-trafficking criminal histories.

On October 14, 2016, Officer Longworth's surveillance proved worthwhile.  He was watching the stores when he saw Heard park illegally at a bus stop.  As Heard and Brown exited the car, Officer Longworth's fellow officers arrested Brown for suspicion of his having been

---

[1]The record is ambiguous on whether the informant was anonymous.  For purposes of our analysis, we assume anonymity of the tipster.

involved in a robbery.[2] While Brown was being arrested, Officer Longworth entered the apparel store to question Heard about his parking violation. The officer spotted Heard walking out of an employee-only area of the store with a large bag of marijuana hanging from his pants.[3] This bag, along with another (for a total of about two to three ounces of marijuana) and several hundred dollars were found on Heard upon his arrest. After arresting Heard, Officer Longworth confirmed that he had a drug-trafficking criminal history.

Based on Officer Longworth's investigation, the circumstances of Heard's arrest, and the information provided by the confidential informant, Officer Longworth obtained a search warrant for the Glenway Avenue stores (the "Glenway Avenue Warrant"). The search uncovered drug-distribution paraphernalia, gun accessories, and mail addressed to McCoy. Aside from finding the tools of the trade, however, law enforcement found no narcotics in the stores.

Officer Longworth then applied for a second warrant, this time for permission to search the house that the informant identified as defendants', 10515 Hadley Road (the "Hadley Road Warrant"). The affidavit in support of the Hadley Road Warrant described Officer Longworth's qualifications, the place to be searched (the home), the evidence sought (evidence of drug trafficking), and the following factual support:

- The confidential informant claimed to be "familiar with" the Glenway Avenue stores and to have had "personal relationships" with people associated with them. R.34-2, Page ID# 134–35. The informant reported that Heard, McCoy, and Brown sold marijuana from the stores. The informant also stated that McCoy and Brown worked at the stores. And the informant reported having seen Heard, McCoy, and Brown in possession of marijuana.

- Officer Longworth surveilled the Glenway Avenue stores several times and watched McCoy, Heard, and Brown enter and exit the stores. He also observed heavy foot traffic that he considered consistent with drug trafficking. On the day of the warrant application, Officer Longworth observed Heard park in front of the Glenway Avenue stores. Officer Longworth followed Heard into the store and eventually arrested him

---

[2]This was a warrantless arrest. Brown was later charged with a misdemeanor theft offense, which was ultimately dismissed.

[3]According to the district court, a video recording supported the fact that the marijuana was in plain view. Defendants do not contest this finding.

after spotting him exiting an employees-only section of the store in possession of one large bag of marijuana. When Officer Longworth searched Heard, he found another bag of marijuana and several hundred dollars in cash. McCoy also was present in the store during Heard's arrest.[4]

- Law enforcement searched the Glenway Avenue stores and recovered evidence of drug trafficking—electronic scales, drug packaging materials, a handgun box, handgun ammunition, a handgun magazine, and mail addressed to McCoy.

- The same confidential informant informed Officer Longworth that McCoy and Heard lived together at 10515 Hadley Road, and the informant reported having seen marijuana, large amounts of money, and handguns inside the home.

- On the day of the warrant application, law enforcement surveilled 10515 Hadley Road and observed a car parked in the driveway registered to Heard.

- Officer Longworth confirmed that Heard and McCoy had drug-trafficking criminal histories.

The same magistrate judge who signed the Glenway Avenue Warrant executed the Hadley Road Warrant. The search of the residence uncovered about 2,200 grams of heroin, marijuana, an electronic scale, drug-packaging accessories, about $38,000 in cash, a handgun, and ammunition.

Shortly thereafter, Heard and McCoy were indicted on counts of conspiracy to distribute heroin and marijuana, operating a drug-involved premises, and possession of firearms in furtherance of a drug-trafficking offense. Defendants each moved to suppress the evidence obtained from the stores and the home. The district court upheld the warrant to search the stores as supported by probable cause. But the Hadley Road Warrant did not fare as well.

The district court determined that the affidavit in support of the Hadley Road Warrant failed to establish any connection between the alleged criminal activity and the home. The court then refused to apply the good-faith exception to the exclusionary rule, *see United States v. Leon*, 468 U.S. 897, 923 (1984), concluding that the lack of a nexus rendered the affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." R.45, Order, Page ID# 445–53. The court suppressed all evidence found at 10515 Hadley Road. And the government appealed.

---

[4]Officer Longworth also learned that Brown worked at the stores.

II.

The issue before us is whether the district court erred in suppressing evidence discovered during the search of 10515 Hadley Road. We apply a mixed standard of review. We defer to the district court's factual findings unless they are clearly erroneous, but we review de novo its legal conclusions, including its decision about whether the good-faith exception to the exclusionary rule applies. *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017).

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This constitutional protection requires a government agent to support an application for a search warrant with a substantial basis linking the evidence to be seized and the place to be searched. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). When a government agent fails to support his application with this showing of probable cause, a judge should refuse to issue the warrant.

But judges sometimes make mistakes. When this happens, law enforcement may obtain a warrant that it shouldn't have obtained and search a place that it shouldn't have searched. The exclusionary rule usually prevents the government from using illegally obtained evidence in a criminal proceeding against the victim of the unlawful search and seizure. *See Illinois v. Krull*, 480 U.S. 340, 347 (1987). A magistrate judge's error in issuing a search warrant, however, does not always require suppression of reliable evidence. *See United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006). In *United States v. Leon*, the Supreme Court created an exception to the exclusionary rule. 468 U.S. at 922. The Court held that when an officer relies on a search warrant later invalidated, evidence obtained from the warrant-authorized search is admissible unless reasonable officers would not have believed the warrant constitutionally permissible. *Id.* As the Court explained, the judge issuing a warrant—not the officer applying for one—has responsibility for determining whether probable cause exists, and the rule excluding unlawfully obtained evidence has little deterrent effect when applied to objectively reasonable law enforcement activity. *Id.* at 919–22. Thus, any benefit derived from excluding evidence in these situations cannot justify the substantial costs of exclusion. *Id.* at 922.

To determine whether the *Leon* good-faith exception to the exclusionary rule applies, we must decide "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. The Supreme Court has outlined four circumstances in which no reasonable officer would have relied on a judge-issued warrant. *See id.* at 914–15. This case involves the third scenario: when an officer "rel[ies] on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (citations and internal quotation marks omitted).

For an officer's reliance on a warrant to have been reasonable, the application must have provided "a minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 596). The affidavit need not establish a "substantial basis," only "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *White*, 874 F.3d at 497 (citation and internal quotation marks omitted); *United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005) (explaining that good-faith reliance on an affidavit requires a "less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause" (quoting *Carpenter*, 360 F.3d at 595)). Still, for an officer's reliance on a search warrant to have been reasonable, the affidavit must present some "particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions." *McPhearson*, 469 F.3d at 526.

When we review a warrant application for indicia of probable cause, we "read the affidavit reasonably . . . holistically, examining the totality of the circumstances and employing a healthy dose of common sense." *White*, 874 F.3d at 502. We consider both the facts outlined in the affidavit and the reasonable inferences permissibly drawn from those facts. *Id.* at 500.

One important inference that a reviewing court may consider is that "it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there." *United States v. Williams*, 544 F.3d 683, 686–87 (6th Cir. 2008). Our caselaw delineates when this inference may be applied to drug dealers—that is, when one can reasonably infer that "drug contraband is likely to be found inside drug

traffickers' homes." *White*, 874 F.3d at 500 (citing *Williams*, 544 F.3d at 687). In *United States v. Frazier*, we clarified that "the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." 423 F.3d at 533 (citing *United States v. Savoca*, 761 F.2d 292, 295 (6th Cir. 1985)). Nor can the government establish this tie by showing evidence of a single instance of the defendant's having dealt drugs away from his home. *Peffer v. Stephens*, 880 F.3d 256, 273 (6th Cir. 2018), *petition for cert. filed* (May 23, 2018) (No. 17-1598) ("[W]hen drugs are used in the commission of a distribution offense, the distributed drugs are no longer in the possession of the suspected distributor."). So to infer a fair probability that a defendant's residence may contain evidence of drug trafficking, "[t]he affidavit . . . must establish some other reason to believe that drugs or other evidence of crime [will] be found in the suspect's residence." *Id.* As *Frazier* recognized, however, a link between the drug dealer's activities and his home that would be insufficient to establish probable cause may suffice to establish good-faith reliance on the warrant. 423 F.3d at 537 (holding that even though evidence of a defendant's having dealt drugs from his former residence could not establish probable cause to search his current residence, the good-faith exception to exclusionary rule applied because "a reasonably well-trained officer could infer that a drug dealer who kept drugs in his former home would also keep drugs in his current home").

To infer permissibly that a drug-dealer's home may contain contraband, the warrant application must connect the drug-dealing activity and the residence. Typically, this will require some "facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Brown*, 828 F.3d at 383. Many of our cases provide examples. *See, e.g.*, *Carpenter*, 360 F.3d at 595–96 (finding sufficient basis for *Leon* good-faith exception when affidavit explained that "marijuana was growing 'near' the residence and that 'there is a road connecting' the residence and the marijuana plants"); *White*, 874 F.3d at 500 (applying inference when officers recorded a controlled buy from the defendant in the driveway of the residence fewer than seventy-two hours before the affidavit was executed); *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) (applying inference because reliable confidential informant had "observed someone come out of [the defendant's] residence, engage in a drug transaction, and then return into the residence").

But "facts showing that the [defendant's] residence had been used in drug trafficking" are not always necessary for application of the inference that drug contraband will be found in the drug dealer's home. *See Brown*, 828 F.3d at 384 n.2. Evidence of a defendant's ongoing course of unlawful conduct may make it reasonable to conclude that he keeps evidence of his illegal scheme in his home. Indeed, our cases have long established that "probable cause generally exists to search for the fruits and instrumentalities of criminal activity at the residence of a drug dealer with continual and ongoing operations." *United States v. Newton*, 389 F.3d 631, 636 (6th Cir. 2004), *vacated on other grounds*, 546 U.S. 803 (2005); *see United States v. Bethal*, 245 F. App'x 460, 467 (6th Cir. 2007) (explaining that evidence that a defendant "is a drug dealer with 'continual and ongoing operations' in and of itself creates probable cause to search his home"). When a warrant application presents reliable evidence that a drug-trafficking operation is ongoing, "the lack of a direct known link between the criminal activity and [dealer's] residence, becomes minimal." *Newton*, 389 F.3d at 635–36 (citing *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001)).

Under this continual-and-ongoing-operations theory, we have at times found a nexus between a defendant's residence and illegal drug activity with no facts indicating that the defendant was dealing drugs from his residence. For example, in *United States v. Gunter*, we held that a defendant's having engaged in regular or repetitive drug sales involving a large quantity of drugs made it "reasonable to conclude that [he] was engaged in ongoing drug trafficking," and thus "reasonable to infer that evidence of illegal activity would be found at [his] residence." 551 F.3d 472, 481 (6th Cir. 2009). We have also found a nexus between drug activity and a defendant's residence based on the defendant's record of past drug convictions coupled with recent, reliable evidence of drug activity. *See United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002) (upholding search of the defendant's residence as supported by probable cause based on his prior cocaine-related convictions coupled with officers' same-day observations of the defendant's signing for a package containing a large amount of cocaine delivered at someone else's residence).[5]

---

[5]Though this nexus inquiry is ultimately a fact-based one, evidence of a single instance of drug possession or distribution typically will not suffice to establish that a drug dealer is engaging in continual and ongoing

Likewise, when considering whether a defendant is engaged in an ongoing, illegal, drug operation, courts may consider other details, including the circumstances of a defendant's arrest. For example, when an affidavit sets forth evidence that the defendant was arrested in or near a drug-operations base, this may permit the inference that the defendant was engaging in continual and ongoing operations and that evidence of those operations would likely be found in his home. Consider *United States v. Kenny*, 505 F.3d 458 (6th Cir. 2007). There, police executed a search warrant at a property with a barn. In the barn, officers found and arrested Kenny and his son. *Id.* at 460. They also found a partitioned area containing a methamphetamine-manufacturing lab. *Id.* The next day, law enforcement obtained and executed a search warrant for Kenny's residence (a different property than the one with the barn). *Id.* In upholding the search of Kenny's residence as supported by probable cause, we applied "the inference that a drug dealer keeps evidence of wrongdoing in his residence" because "the affidavit had the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes." *Id.* at 461 (quoting *McPhearson*, 469 F.3d at 524). We highlighted that an informant had tied Kenny to the methamphetamine lab in the barn, that Kenny was arrested close to the lab, and that a search of the barn corroborated much of the informant's intelligence. *Id.* at 461–62.

The search of Heard's home, like the search of Kenny's home, sprang from his arrest near a drug-operations base. Although the Glenway Avenue stores were not where the drugs were created (as was the methamphetamine lab in *Kenny*), there was evidence that those businesses were involved in drug distribution. An informant reported that Heard trafficked marijuana from the Glenway Avenue stores. The police arrested Heard at the Glenway Avenue stores shortly after he "walk[ed] out of a rear employee area" with two bags of marijuana on him. The police's search of the stores turned up hallmarks of drug trafficking: electronic scales, drug-packaging materials, and gun accessories. And based on the search of the stores, the police then

---

operations. *See, e.g.*, *Brown*, 828 F.3d at 383–84 (refusing to apply the inference that drug-related contraband would be found in the defendant's home when the affidavit stated that the defendant was arrested for one instance of attempting to deliver heroin, had exchanged a text message evidencing the drug sale, and officers detected the odor of drugs in the defendant's car); *McPhearson*, 469 F.3d at 524–25 (refusing to apply the inference when the affidavit failed to establish that the defendant was a drug dealer and stated only that officers found a small amount of cocaine in the suspect's pocket when they arrested him on an unrelated charge).

applied for a warrant to search Heard's home. The affidavit in support of that search, like the affidavit that supported the search of Kenny's home, relayed the circumstances of the defendant's arrest, the fruitful results of an earlier search, and the informant's information identifying the defendant as a participant in the ongoing drug-related operation.

Given the result in *Kenny*, we cannot fault law enforcement for relying on a similar affidavit. In both cases, the police arrested the defendant in the very location where they suspected they would find a drug-operations base.[6] In both cases, the search of that base revealed evidence of a drug-operations scheme. And in both cases, officers relayed those facts in an affidavit in support of a warrant to search the arrested defendant's home. If the inference that a drug dealer keeps evidence of wrongdoing in his residence sufficed to sustain the magistrate's probable-cause finding in *Kenny*, then the analogous facts here are enough to satisfy the "less demanding" good-faith standard. *Cf. White*, 874 F.3d at 501–02 (applying good-faith exception when a case with similar facts had upheld a probable-cause finding because "no reasonable officer could have suspected that the affidavit in this case . . . was beyond the constitutional pale").

The parties' disagreement about the classification of the informant—anonymous tipster or known confidential informant—does not affect our reliance on *Kenny*. True, the informant in *Kenny* was a named informant, *Kenny*, 505 F.3d at 460, and here the informant was unnamed. But the information relayed in *Kenny* was second-hand, while the information here was first-hand. And more important, "[w]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Frazier*, 423 F.3d at 536 (alteration in original) (citation and internal quotation marks omitted). Indeed, an affidavit can establish an informant's reliability by corroborating "the details of his tip." *United States v. Boyd*, 735 F. App'x 202, 205 (6th Cir. 2018) (citing *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005)). Here, the affidavit did just that. Most important, the affidavit relayed that Heard was arrested in the very location the tipster identified as the place of

---

[6]As noted, the barn in *Kenny* was the base of a drug-manufacturing operation, and so the defendant's presence in that location placed him in the center of the scheme. But we see no reason why Heard's presence at a drug-distribution, as opposed to a drug-manufacturing, facility should not also support a reasonable inference of Heard's participation in continual and ongoing illegal drug operations.

dealing, and he was arrested with the same drug on him that the tipster identified. Heard was also caught with *two* bags of marijuana on him, which, as the district court explained, "would arguably be unnecessary if the marijuana was for personal use." R.45, Order, Page ID# 450.

Consider also the circumstances of Heard's arrest. The affidavit explained that just before his arrest, Heard was spotted walking out of an employee-only area of the store, the same store where officers later discovered hallmarks of drug trafficking: electronic scales, drug packaging materials, and gun accessories. And finally, Officer Longworth learned that Heard had a drug-trafficking criminal history. *See White*, 874 F.3d at 498 ("[Detective] discovered that defendant had 'numerous' drug convictions, lending further credence to the informant's tip that defendant's narcotics activity was ongoing and that the controlled buy was not an aberration."). Because of this substantial corroboration of the informant's tip about Heard's drug trafficking, it matters not that the officers set up no controlled buy at the store. *See United States v. Hines*, 885 F.3d 919, 925 (6th Cir. 2018). The affidavit's facts showed sufficient "meaningful" corroboration to credit the tip. *Cf. United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (finding the good-faith exception did not apply when the officers conducted no surveillance and failed to verify even the defendant's criminal record).

Finally, that the paraphernalia discovered at the Glenway Avenue stores did not specifically attach itself to either Heard or McCoy does not render the officers' reliance on the affidavit here unreasonable. Unsurprisingly, the items in the store did not contain any identifying marks linking them to defendants. And we acknowledge that the connection between the drug-distribution paraphernalia and defendants is more attenuated than the connection between the methamphetamine lab and the defendant in *Kenny*. *See Kenny*, 505 F.3d at 461 (noting that the defendant and his son "were the only individuals in the [barn] at the time and appeared to be in charge of the functioning of the lab"). We also recognize that a more substantial link between the drug-distribution paraphernalia and defendants may have been necessary for a probable-cause determination.

But this case is about law enforcement's good-faith reliance on the warrant. And we have explained that "reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." *White*, 874 F.3d at

500. For example, in *Carpenter*, law enforcement "spotted patches of marijuana growing in fields approximately 900 feet away from a residence belonging to [the defendant]." 360 F.3d at 593. They also saw "beaten paths leading from the back door of the residence to the marijuana patches." *Id.* Though these facts "were too vague to provide a substantial basis for the determination of probable cause," they "were not so vague as to be conclusory or meaningless." *Id.* at 596. In fact, because the affidavit "noted both that the marijuana was growing 'near' the residence and that 'there is a road connecting' the residence and the marijuana plants," we could not say that it was "completely devoid of any nexus between the residence and the marijuana that the police observed." *Id.* at 595–96. As a result, the good-faith exception to the exclusionary rule applied.

A similar analysis applies here. Given the circumstances of Heard's arrest, a reasonably well-trained officer could infer a connection between Heard's marijuana possession and the drug-distribution paraphernalia that officers found in the store. The affidavit provided that Heard (who had a criminal drug-trafficking record) drove to the Glenway Avenue stores with Brown (an associate who had recently been indicted for felony possession of marijuana and an employee with access to the non-public portions of the stores). Officer Longworth observed Heard arrive at the apparel store, and when he next saw Heard walking out of a rear employee area of the apparel store, Heard had two bags of marijuana on him, one visible. And officers later searched the store and recovered electronic scales, drug packaging materials, and gun accessories. Considering all this, the inference that Heard was connected to the drug-trafficking paraphernalia is reasonable. This is especially so given the informant's tip that Heard was dealing marijuana from the Glenway Avenue stores and that he lived with McCoy (another employee with access to the employee-only areas of the store). And based on the connection between Heard and the drug-trafficking paraphernalia, law enforcement's belief that the affidavit provided probable cause to search Heard's home was not unreasonable given the inference we applied in *Kenny*— that when a drug dealer is engaging in continual and ongoing operations, drug contraband is likely to be found in the drug dealer's home.

Thus, the Hadley Road affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

### III.

For these reasons, we REVERSE the district court's order to the extent that it granted defendants' motion to suppress evidence obtained in the Hadley Road search and REMAND for further proceedings consistent with this opinion.