RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0435p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

No. 05-5534

MARTEDIS MCPHEARSON,

*Defendant-Appellee.*

>

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 04-10038—James D. Todd, Chief District Judge.

Argued: July 26, 2006

Decided and Filed:  November 27, 2006

Before:  GIBBONS and ROGERS, Circuit Judges; HOLSCHUH, District Judge.[*]

---

**COUNSEL**

**ARGUED:** R. Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellant.  Angela L. Pitts, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellee.  **ON BRIEF:**  R. Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellant. J. Patten Brown III, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellee.

GIBBONS, J., delivered the opinion of the court, in which HOLSCHUH, D. J., joined. ROGERS, J. (p. 9), delivered a separate dissenting opinion.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.  A grand jury returned an indictment charging Martedis McPhearson ("McPhearson") with possession of crack cocaine with intent to distribute, being a felon in possession of a firearm, and possession of a firearm during and in relation to a drug-trafficking crime.  McPhearson filed a motion to suppress evidence seized from his residence.  The United States District Court for the Western District of Tennessee granted McPhearson's motion.

---

[*]The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

The government appeals the order granting the motion to suppress. For the following reasons, we affirm the district court's order.

## I.

Charles Mathis ("Mathis") and Christopher Wiser ("Wiser"), investigators for the Jackson, Tennessee, police department, traveled on or about December 12, 2003, to a residence inhabited by McPhearson at 228 Shelby Street in Jackson. Mathis and Wiser went to arrest McPhearson on a warrant for simple assault after receiving information from Patrol Officer Maurice Willis that McPhearson was at home.

Mathis knocked on the front door, while Wiser secured the rear exit of the house. McPhearson answered the door and identified himself to Mathis. Mathis then arrested McPhearson on the front porch of the Shelby Street residence. After walking McPhearson to the police car, Wiser searched him incident to the arrest. The pat-down located crack cocaine in McPhearson's right front pocket. Mathis and Wiser asked McPhearson for permission to search his house, and McPhearson refused consent.[1]

Wiser and Mathis decided to obtain a search warrant. Mathis contacted their supervisor, Lieutenant Patrick Willis, and provided him with information for the search warrant. After Lieutenant Willis drafted the search warrant, he and Mathis went to Judge Christy Little's house. Little is a juvenile court judge for Madison County, Tennessee. Judge Little examined the warrant drafted by Lieutenant Willis and the affidavit sworn by Mathis. The affidavit stated, in pertinent part:

> Investigator Mathis, who makes oath that he has probable cause for believing and does believe that Martedis M. McPhearson . . . is in possession of the following described property, to wit: Illegal controlled substances, particularly crack cocaine, records, ledgers, tapes, electronic media and other items which memorialize drug trafficking or proceeds therefrom contrary to the laws of the State of Tennessee . . . . [H]is reason for such belief and the probable cause for such belief are that the Affiant has: Investigator Mathis and Wiser, received information from Officer A. Willis that Martedis McPhearson was wanted for simple assault. Officer Willis located McPhearson's vehicle at 228 Shelby Street. Inv. Mathis and Wiser went to 228 Shelby Street and knocked on the door. A black male answered the door and identified himself to be Martedis McPhearson. Investigators informed McPhearson that they were taking him in custody on the simple assault warrant. McPhearson was searched prior to being placed in the police car for transport to booking. Investigator Wiser discovered in McPhearson's right front pocket a clear plastic bag containing a white chalky substance that is consistent with, and appeared to be crack cocaine,. [sic] The substance was field tested by Inv. Mathis. The field test showed positive for the presence of cocaine. The substance weighed 6.4 grams. E-911 records revealed that 228 Shelby is the residence of Martedis McPhearson.

---

[1]The chronology of events transpiring after McPhearson denied Mathis and Wiser permission to search the Shelby Street residence is disputed. Witnesses for the government testified that the Jackson police secured the Shelby Street residence and obtained a search warrant, while witnesses for McPhearson testified that Jackson police officers began searching the Shelby Street residence before securing a search warrant. Despite the conflicting testimony, the district court made no credibility determinations, and the contradictory accounts of the events at the Shelby Street residence have no impact on our resolution of the case. Accordingly, we will relay only the police officers' version of events for simplicity.

Being satisfied that there was probable cause, Judge Little signed a search warrant for 228 Shelby Street.

While Lieutenant Willis and Mathis were obtaining the search warrant, Wiser waited at 228 Shelby Street and called the police station for additional officers. Wiser knocked on the door of the house and advised two women who were inside that they could not leave because the police were obtaining a search warrant. He remained in the house with the women until Jackson police officer Tony Cepparulo ("Cepparulo") arrived. Cepparulo and Wiser then swept through the house "to clear the residence and make sure there was nobody in there with any kind of weapons that could do any kind of harm to [them] or the other females that [sic] were in the house."[2]

After Wiser and Lieutenant Willis returned with the search warrant, the Jackson police conducted a full scale search of 228 Shelby Street. They uncovered distribution quantities of crack cocaine and firearms.

## II.

McPhearson moved the district court to suppress the evidence seized in the protective sweep and search of his residence. After a suppression hearing, the district court granted the motion, focusing on the affidavit sworn by Mathis and its deficiencies. From the bench, the court said:

> There are cases that have held that when the defendant is arrested at his residence with a large quantity of drugs, then that is an indication that there may have been drug paraphernalia in the house.
>
> There are cases that hold that a person who is arrested at his home and gives deceptive answers to the policemen at the time of the arrest about where he had gotten the drugs or where he had been -- deceptive answers along with an arrest with drugs in his pocket might be enough for probable cause.
>
> The problem in this case though is that there's none of that in the affidavit. All the affidavit says, and I've read it carefully several times, basically, is that Mr. McPhearson was arrested on a simple assault warrant. He was taken into custody on that warrant. He was searched prior to being placed in the police car, and they discovered in his right front pocket a clear plastic bag containing crack cocaine, which weighed 6.4 grams. And this residence was the residence of McPhearson. And that's all. So I don't have these other issues that the other courts have held to be sufficient.
>
> We still look at the *Illinois v. Gates* totality of the circumstances, and I don't think I can conclude that there was any evidence presented to Judge Little that there were drugs in the house. So it's my judgment that the Illinois -- I'm sorry, that the search warrant was issued without probable cause.
>
> Now, the next question becomes, how about the protective sweep, and is the evidence gathered during the protective sweep admissible. And it seems to me that they went to the house to get Mr. McPhearson. They got Mr. McPhearson. They had no indication that anything was going on in the house. A protective sweep was unnecessary. So the evidence seized during the investigative sweep is also suppressed.

---

[2]Their sweep located Elton Nance hiding in a bathroom. Nance was later charged as a co-defendant in this case.

Then I get to the *Leon* good-faith exception, and then I have to decide did the officers who served the search warrant have a good-faith belief in the validity of the warrant . . . .

. . . .

The more difficult issue in the *Leon* good-faith exception is where the supporting affidavit was nothing more than a bare-bones affidavit, so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. My reading of this affidavit indicates that it is a bare-bones affidavit. It doesn't offer any indication that drugs or drug paraphernalia were inside the house or that the officer had any reason to believe that they were inside the house.

Perhaps if the affidavit had said that based on this officer's experience in drug law enforcement, drug dealers often keep drug paraphernalia in their home, and one with 6.9 grams of crack cocaine likely had it for resale, and I, therefore, think there's something in the house -- but none of that's here. It's a bare-bones affidavit; therefore, it's my judgment that the *Leon* good-faith exception does not apply. The defendant's motion to suppress is, therefore, granted.

The district court adhered to its ruling when the government filed a motion to reconsider.

The government appealed the district court's grant of the motion to suppress with respect to the evidence seized in the search but not with respect to the evidence seized in the protective sweep.

## III.

The propriety of the protective sweep was considered by the district court but not raised by the government on appeal. Issues that were raised in the district court, but not on appeal, are considered abandoned and are not reviewable on appeal. *See United States v. McClellan*, No. 00-5606, 2002 WL 104810, at *2 (6th Cir. Jan. 24, 2002) (citing *Enertech Elec., Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 259 (6th Cir.1996)) (applying waiver doctrine in a criminal case); *see also Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (holding that failure to appeal the summary judgment with respect to one claim constituted waiver). Therefore, the district court's invalidation of the protective sweep must stand. The only issues the government properly raised before this court are whether the search warrant validly issued on a showing of probable cause and, if not, whether the search could be saved by application of the good-faith exception to the exclusionary rule.

## IV.

The Fourth Amendment provides that "no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Whether the police had probable cause to search determines whether a search conducted pursuant to a warrant comports with the Fourth Amendment. *Warden v. Hayden*, 387 U.S. 294, 301-02 (1967); *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003). "Though evidence obtained in violation of the Fourth Amendment is generally excluded, the Supreme Court has held that the exclusionary rule 'should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)). The district court found that probable cause was so lacking that neither was the search warrant valid nor was the officers' belief in its validity reasonable. Therefore, the district court found that the search violated the Fourth Amendment and suppressed the evidence seized.

A.

"When reviewing decisions on motions to suppress, this court will uphold the factual findings of the district court unless clearly erroneous, while legal conclusions are reviewed *de novo*." *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996). This court views the evidence "in the light most likely to support the district court's decision." *United States v. Williams*, 962 F.2d 1218, 1221 (6th Cir. 1992) (internal quotation omitted).

B.

A search warrant comports with the Fourth Amendment if it was issued by a "magistrate [who] had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing . . . ." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)) (second and third alteration in original). Such a conclusion depends on the totality of the circumstances, *id.* at 230-31, and should not be set aside unless arbitrarily drawn because "[t]his court pays great deference to the determinations of probable cause made by a state magistrate." *Weaver*, 99 F.3d at 1376. However, the court must "insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), *overruled on other grounds*, *Gates*, 462 U.S. at 238.

"For the magistrate to be able to properly perform this official function, the affidavit presented [in support of the search warrant] must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *Weaver*, 99 F.3d at 1376. The affidavit must contain particularized facts demonstrating "a fair probability that evidence of a crime will be located on the premises of the proposed search." *Frazier*, 423 F.3d at 531. This requires "a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (internal quotation omitted). In other words, the affidavit must suggest "that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought" and not merely "that the owner of property is suspected of crime." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

The affidavit in this case did no more than state that McPhearson, who resided at 228 Shelby Street, was arrested for a non-drug offense with a quantity of crack cocaine on his person. These averments were insufficient to establish probable cause because they do not establish the requisite nexus between the place to be searched and the evidence to be sought. "'[A] suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship' necessary to a finding of probable cause." *United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) (quoting *United States v. Flores*, 679 F.2d 173, 175 (9th Cir. 1982)).

The government argues that McPhearson's arrest outside his home with drugs on his person was sufficient to establish a fair probability that his residence would contain evidence of wrongdoing. The argument depends on an inference that "an individual arrested outside his residence with drugs in his pocket is likely to have stored drugs and related paraphernalia in that same residence." (Gov't's Br. 11.) This inference can be drawn permissibly in some cases, as evidenced by *United States v. Miggins* and the cases cited therein. 302 F.3d 384, 393-94 (6th Cir. 2002). But in all those cases, the affidavits contained an additional fact that permitted the magistrate to draw the inference that evidence of wrongdoing would be found in the defendants' homes—namely, the independently corroborated fact that the defendants were known drug dealers

at the time the police sought to search their homes.[3] *See, e.g.*, *United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999) (finding it reasonable to infer that a known drug dealer would store evidence of his trade at home); *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999) ("[I]n issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept . . . and . . . in the case of drug dealers evidence is likely to be found where the dealers live."). That fact was absent from the affidavit in this case. McPhearson was not a known drug dealer: his prior convictions were for property crimes, and the warrant on which the police arrested him was for simple assault. In the absence of any facts connecting McPhearson to drug trafficking, the affidavit in this case cannot support the inference that evidence of wrongdoing would be found in McPhearson's home because drugs were found on his person.

Without this inference and any supporting facts suggesting that McPhearson's home would contain evidence of crime, Judge Little lacked a substantial basis for concluding that probable cause existed for issuing the warrant.

C.

The exclusionary rule does "not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances . . . may be considered." *Leon*, 468 U.S. at 922-23, n.23.

The good-faith exception, however, does not apply in four situations: (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid. *Laughton*, 409 F.3d at 748 (citing *Leon*, 468 U.S. at 914-23).

The third limitation on the good-faith exception, which the district court applied in this case, prevents introduction of evidence seized under a warrant that issued on the basis of a "bare bones" affidavit. *Id.* at 748. A bare bones affidavit is one that merely "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Weaver*, 99 F.3d at 1378.

Determining whether the affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than the one involved in determining whether the affidavit provided a "substantial basis" for the magistrate's conclusion of probable cause. *Laughton*,

---

[3] In some instances, even the fact that the residences to be searched were occupied by known drug dealers is insufficient to establish the nexus between the residences and criminal activity. In *United States v. Frazier*, we wrote that our case law does not "support[] the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home. Where . . . the warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants . . . , the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *Frazier*, 423 F.3d at 533. Thus, an allegation of drug dealing based on information from an untested confidential informant is insufficient to establish probable cause to search the alleged drug dealer's home. However, where the allegation of drug dealing is coupled with independently corroborated information from police officers, it may be sufficient to establish probable cause. *See, e.g.*, *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002). Whether probable cause can be established by an allegation of drug dealing is irrelevant to our resolution of this case, however. The allegation of drug dealing was absent from the affidavit supporting the warrant in this case, which presents a probable cause determination based on an even looser connection between the residence and the suspected criminal activity.

409 F.3d at 748-49 (quoting *Carpenter*, 360 F.3d at 595). If the inquiries were identical, the probable cause determination would subsume the good-faith exception. *Id.* at 749. The good-faith inquiry requires examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions. *Id.* at 748-49.

The affidavit in this case was so bare bones as to preclude any reasonable belief in the search warrant that the affidavit supported. As noted above, the affidavit failed to establish a nexus between McPhearson's residence and evidence of wrongdoing that would support a finding of probable cause. However, the failure to establish probable cause is not dispositive of whether the affidavit could support a reasonable belief in the validity of the search warrant for purposes of the exclusionary rule. "We previously found *Leon* applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *Carpenter*, 360 F.3d at 596. The minimal nexus required to support an officer's good faith belief was not present in this case.

The only connection in the affidavit between 228 Shelby Street and drug trafficking was that Jackson police arrested McPhearson at his residence and found crack cocaine in his pocket in a search incident to the arrest. This connection cannot establish the minimal nexus that has justified application of the good-faith exception in cases where the nexus between the place to be searched and the evidence to be sought was too weak to establish probable cause. *See Frazier*, 423 F.3d at 536-37; *Carpenter*, 360 F.3d at 595-96; *United States v. Van Shutters*, 163 F.3d 331, 337-38 (6th Cir. 1998); *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994); *Savoca*, 761 F.2d at 298-99. The application of the good-faith exception in *Frazier*, *Savoca*, and *Van Shutters* depended on the fact that each of the defendants were known to have participated previously in the type of criminal activity that the police were investigating. In *Frazier*, the defendant was a known drug dealer and drugs had been found at his prior residence. 423 F.3d at 537. In *Savoca*, the defendants had been identified as the perpetrators of a string of bank robberies in two states. 761 F.2d at 295-98. Similarly, in *Van Shutters*, the defendant had confessed to perpetrating an auto-theft scheme. 163 F.3d at 336-37. Finally, in *Shultz*, the court found that the minimal nexus was satisfied by the officer's reliance on his years of experience as a narcotics investigator and the knowledge he had acquired of drug dealers' business practices. 14 F.3d at 1098. Each of these additional facts, although not sufficient to establish probable cause, created the minimal nexus between the place to be searched and the evidence sought that would permit application of the good-faith exception. In this case, there are no analogous facts that establish the minimal nexus. The affidavit merely stated that: (1) "Inv. Mathis and Wiser went to 228 Shelby Street and knocked on the door. A black male answered the door and identified himself to be Martedis McPhearson"; (2) "McPhearson was searched prior to being placed in the police car for transport to booking. Investigator Wiser discovered in McPhearson's right front pocket a clear plastic bag containing . . . [crack cocaine]"; and (3) "E-911 records revealed that 228 Shelby is the residence of Martedis McPhearson." The affidavit did not allege that McPhearson was involved in drug dealing, that hallmarks of drug dealing had been witnessed at his home, such as heavy traffic to and from the residence, or that the investigating officers' experience in narcotics investigation suggested to them that 6.9 grams of crack cocaine was a quantity for resale. Nor did the affidavit allege anything else tying McPhearson or his home to any criminal activity other than personal possession of crack cocaine (and the simple assault for which he was arrested). Instead, the "evidence in the affidavit connecting the crime to the residence [wa]s 'so vague as to be conclusory or meaningless.'" *Frazier*, 423 F.3d at 537 (quoting *Carpenter*, 360 F.3d at 596). Therefore, we conclude that the district court properly refused to apply the good-faith exception to validate the search because the affidavit was "so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *Laughton*, 409 F.3d at 748.

V.

For the foregoing reasons, we affirm the district court's grant of McPhearson's motion to suppress.

———————

**DISSENT**

———————

ROGERS, Circuit Judge, dissenting. When officials read an affidavit describing how a man emerged from his single-family residence with over six grams of crack cocaine and how agents on the scene believed that there were more drugs inside the dwelling, the officials could reasonably believe that the search-warrant affidavit adequately described probable cause to justify a search of the dwelling. *See United States v. Carpenter*, 360 F.3d 591, 594-97 (6th Cir. 2004). If there was, in hindsight, no probable cause for the search, the officials executing a warrant based on that affidavit are still entitled to the good-faith exception in *United States v. Leon*, 468 U.S. 897 (1984). For this reason, the district court should not have suppressed the evidence that authorities obtained in executing the warrant based on the affidavit.

In this case, police arrested McPhearson at his residence and found a white chalky substance, which turned out to be crack cocaine, in his pocket. Having found illegal drugs on McPhearson, officers believed that they could find additional drugs in McPhearson's home. Indeed, it is a reasonable inference that at least some people who carry crack cocaine around with them in their homes would leave some of the contraband, which they could divide into smaller amounts, elsewhere in their homes. *See United States v. Laughton*, 409 F.3d 744, 749-50 (6th Cir. 2005) (acknowledging that officials may make at least a single inference to fill a gap in an affidavit). Acting on this suspicion, authorities obtained a search warrant based on an affidavit that described how officers discovered crack cocaine on McPhearson's body and believed that additional drugs were in the home.

Decisions from this Circuit suggest that the affidavit in this case was sufficient to establish probable cause. In *United States v. Frazier*, for example, this court found a "strong" connection between the place to be searched and the evidence to be sought when affidavits described how authorities found drugs in defendant's former residence and that defendant, a suspected drug dealer, likely kept contraband where he resided. 423 F.3d 526, 537 (6th Cir. 2005). In this case, authorities found drugs on McPhearson as he emerged from his single-family residence, a place that he might have kept additional drugs. In *United States v. Carpenter*, meanwhile, this Court, sitting *en banc*, noted that if the "affidavit had stated that beaten paths led from the marijuana patches to the door of [defendants'] residence, and that two men had been spotted walking from the marijuana patches to the residence, the affidavit would likely have been sufficient to establish probable cause." 360 F.3d at 594 (citations omitted). In this case, officers discovered McPhearson with drugs on his body, in contrast with drugs a distance away, and observed McPhearson emerge from his home, in contrast with finding him walking towards his residence.

Whether the affidavit adequately described probable cause in this case is a close call; however, whether officials could claim good-faith reliance on the affidavit is a straightforward issue. Because the affidavit described facts sufficient to bring this case within the realm of *Frazier* and *Carpenter*, the officers are entitled to the *Leon* good-faith exception. To be sure, the officers certainly could have done more to elaborate on why they believed that there was probable cause to search McPhearson's house. For example, they could have described in detail how, in their professional opinions based on experiences in narcotics investigations, individuals who carry on them over six grams of crack cocaine while in their homes frequently have additional quantities of drugs in that residence. However, only a police officer with extraordinary legal training would have detected any potential deficiencies in the affidavit because it failed to articulate this inference. *See United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998).

For these reasons, I respectfully dissent.