*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

CHARLES EDWARD SKIPP,

        Defendant-Appellee.

UNPUBLISHED
May 28, 2019

No. 344349
Kent Circuit Court
LC No. 17-011419-FH

Before: GLEICHER, P.J., and KRAUSE and O'BRIEN, JJ.

PER CURIAM.

The trial court granted defendant Charles Edward Skipp's motion to suppress evidence seized during the execution of a search warrant, and the prosecution appeals as of right. A magistrate authorized a search of Skipp's home for evidence connecting Skipp to two gun store break-ins. The one-and-a-half page affidavit submitted in support of the warrant describes the gun store crimes in considerable detail. The information linking Skipp to those crimes is far more limited: that Skipp had once been incarcerated with a likely participant in the gun store capers, and that Skipp agreed to sell guns to an unnamed informant. Notably absent from the affidavit is any factual support for a conclusion that stolen weapons were likely to be found in Skipp's home.

The affidavit's sufficiency presents a close question We instead focus on whether the good-faith exception applies regardless of whether the warrant satisfied Fourth Amendment standards. Viewed through that lens, we conclude that the officers who executed the warrant relied in good faith on its validity. Accordingly, we reverse and remand for further proceedings.

I

The police searched Skipp's home pursuant to a search warrant seeking evidence connecting him to "a breaking and entering of a gun store including but not limited to Guns, Ammo, holsters, Sales tags, Tools including pry bars, saws, generators, clothing worn during B and E. Display pieces associate[d] with the display of guns for sale. Cell phones, computer equipment." The affidavit supporting the warrant was signed by Kent County Sheriff Detective Aron Bowser. Most of the affidavit consists of background information regarding two gun store

-1-

break-ins. Despite abundant details regarding the investigation that ensued, the affidavit does not connect Skipp to the gun store crimes.

The affidavit's first substantive paragraph describes an attempted robbery of a Dunham's store. According to the affidavit, the investigating officers determined that "a large and powerful saw" was used to cut through steel door hinges. Two men entered the store and tried to open "two hand gun cases" by striking them with "crowbars." A "red Tekton prybar" was left behind. Store surveillance video captured the perpetrators' clothing, but their faces could not be seen.

The affidavit next chronicles the robbery of a Family Farm and Home store. Again, the suspects gained entry "using a powerful saw." This time, they used the saw to cut through gun cases and were able to steal "numerous hand guns." Two Tektron pry bars remained at the scene.

The third paragraph states that a search conducted pursuant to a warrant yielded seven hand guns. The serial numbers or descriptions of most of these guns matched those taken during the Family Farm and Home robbery. The fourth paragraph recounts the results of another search, this one conducted at the residence of Derrek Banks. Officers recovered five handguns in Banks's kitchen; two were from the Family Farm and Home heist. Officers also found "warrant tags" consistent with those used by the store. Bowser's fifth paragraph offers more details regarding this second search. In addition to the guns and tags, officers found cutting saws "capable of making the cuts found at both Dunhams and Family Farm and Home."

Bowser's affidavit then identifies the people interviewed during the gun store investigations, and mentions that Banks had been arrested. Banks lived with a woman named Tamika Brown, the affidavit declares, and "has another girlfriend on the side whom he works with." The next sentences state: "This individual was questioned and stated that Banks and his friends 'Meechie' (Demetrius Toliver) and a 'white guy' named 'Skip' who Banks have been up to no good [sic]. This individual also indicated that Banks and 'Skip' did time together in prison."

The affidavit is unclear regarding the identity of "this individual." In context, Bowser possibly meant that Banks's "girlfriend on the side" was the "individual" who identified "Skip" as Banks's fellow prisoner and associate in "no good." The affidavit does not address this person's reliability. The closest the affidavit comes to linking "Skip" to the gun store robberies is the unnamed informant's contention that "Skip," Banks, and "Meechie" "have been up to no good." "Meechie," however, is never mentioned again. And the unnamed informant's claim that the trio had been "up to no good" does not qualify as reliable evidence that Skipp participated in two specific robberies.

The balance of the affidavit sets forth the information most directly relevant to Skipp:

> On 11/08/17 KANET executed a search warrant on an unrelated controlled substance case. The target of that search warrant indicated that they had information relating to the theft of the firearms from 11/04/17 at Family Farm and Home. . . . This individual provided information that "Skip" was Charles Edward

-2-

Skipp. A search of MDOC records confirmed that Derrek Banks and Charles Edward Skipp, a caucasian male, did spend time in MDOC together.

This individual then contacted Charles Edward Skipp via cell phone and text messaging to set up a purchase of some firearms at a local business. GRPD Vice, already surveilling Charles Edward Skipp, verified that Skipp proceeded to the designated local business on foot from his address located on 135 Quigley Blvd SW. Grand Rapids MI.

KNET informant was wired and met with Skipp at Popeyes at Burton and Division. The informant and Skipp were heard talking about the guns; Skipp states that all the guns he has are new. He stated that he has revolvers as well as automatics and wants 3-400 dollars for each. Further conversation was then heard about Derrek Banks and his bond being around 25 thousand dollars and it will be tough to come up with that kind of money. After the conversation, they agree to do the deal in an hour. Skipp left on foot and was surveilled back to his residence . . . .

These three paragraphs introduce an unnamed "individual" who set up a meeting with Skipp that was overheard by the police. Detective Bowser's description of the conversation between Skipp and "the individual" does not reference the gun store thefts. Nor is it clear that Bowser himself heard the dialogue between Skipp and this second informant; it is equally plausible that the content of the conversation was relayed to him by Vice or KNET squad members ("The informant and Skipp were heard talking about the guns. . . . Further conversation was then heard. . . .). And although Skipp "spent time in MDOC," the affidavit fails to allege that Skipp was ineligible to possess firearms.

A magistrate issued a search warrant for Skipp's home based on Bowser's affidavit. Police found a nine-millimeter magazine full of nine-millimeter ammunition, but no guns. Skipp was charged with possession of ammunition by a person convicted of a felony, MCL 750.224f, and bound over to the circuit court.

Skipp filed a motion to suppress the ammunition evidence, contending that the search warrant affidavit failed to establish probable cause to search his home. The circuit court found the affidavit deficient for several reasons. First, the court noted, the affidavit lacked any averments regarding the informants' reliability. The affidavit also failed to describe any "clear nexus" between the gun store robberies and the informant's meeting with Skipp. And Bowser's recount of the conversation with the second informant appeared to be hearsay. "[A]lthough there is a great deal of information" in the affidavit, the circuit court opined, it failed to provide probable cause that Skipp was involved in the gun store robberies. The court granted Skipp's motion to suppress and dismissed the case.

The prosecution filed a motion for reconsideration, contending that the affidavit provided a substantial basis for inferring a fair probability that evidence of a crime would be found at Skipp's home. The affidavit supported that Skipp was a felon, the prosecution argued, and therefore could not legally possess firearms. The facts supporting this inference, standing alone, sufficed to establish probable cause. The prosecution additionally insisted that the good-faith

-3-

exception to the exclusionary rule applied, rendering admissible the evidence seized during the search.

Skipp responded that because Detective Bowser misled the magistrate by referring to unrelated crimes (the gun store robberies) and failed to attest to the informant's reliability, the good-faith exception could not save the search. The circuit court denied reconsideration without specifically addressing the good-faith exception.

II

The Fourth Amendment commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. A magistrate reviewing a search warrant affidavit must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). Reviewing courts consider whether the magistrate had a "substantial basis for concluding that probable cause existed" to issue the warrant. *Id*. at 238-239 (cleaned up).[1] Our appellate review also focuses on whether "a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Whitfield*, 461 Mich 441, 446; 607 NW2d 61 (2000) (cleaned up). We must afford deference to a magistrate's determination of probable cause. *People v Shawn Adams*, 485 Mich 1039; 776 NW2d 908 (2010).

Detective Bowser's affidavit contained no information linking Skipp to the gun store robberies other than a statement from an unknown informant that Skipp, Meechie and Banks had been "up to no good." On appeal, the prosecution essentially abandons any claim that the affidavit supplies probable cause that Skipp participated in the gun store crimes. Instead, the prosecution contends that the affidavit establishes that Skipp was a convicted felon, from which it can be inferred that he had no right to possess firearms. That Skipp offered to sell firearms to the informant and then returned to his home, the prosecution insists, "provides a substantial basis to conclude that there was a fair probability that evidence of a crime—felon in possession of a firearm or ammunition—would be found at defendant's residence."

Applied in this manner, Bowser's affidavit required the magistrate to draw two key inferences: that Skipp was ineligible to possess firearms, and that he had contraband in his home. The second of these two inferences is the most difficult to justify. While it is reasonable to assume that criminals sometimes store the fruits of their illegal conduct in their homes, no facts

---

[1] This opinion uses the parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

in Bowser's affidavit support that in this case illegal firearms likely would be found in Skipp's residence.

To justify the search of a particular place, an affidavit must suggest "that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought," and not merely "that the owner of property is suspected of crime." *Zurcher v Stanford Daily*, 436 US 547, 556; 98 S Ct 1970; 56 L Ed 2d 525 (1978). That Skipp returned to his home after agreeing to sell guns to the informant is a slim reed on which to rest a broad conclusion that the guns likely were stored there. While the magistrate was entitled to draw reasonable inferences from the facts presented, no evidence supported that Skipp kept guns in his home, and it is difficult to reasonably draw that inference based on the single fact that Skipp returned home after agreeing to provide the weapons "in an hour."[2]

In two somewhat consonant cases, the United States Court of Appeals for the Sixth Circuit rejected an unsupported inference that evidence of a crime is likely to be found in a suspect's home based solely on the suspect's criminal history or personal possession of contraband. A defendant's "status as a drug dealer, standing alone," does not "give[] rise to a fair probability that drugs will be found in his home." *United States v Frazier*, 423 F3d 526, 533 (CA 6, 2005). Similarly, in *United States v McPhearson*, 469 F3d 518, 524 (CA 6, 2006), the Sixth Circuit found no probable cause to issue a search warrant for a suspect's home based on the suspect's arrest on his front porch with a quantity of crack cocaine on his person. "Although common sense and experience inform the inferences reasonably to be drawn from the facts, broad generalizations do not alone establish probable cause." *State v Thein*, 138 Wn2d 133, 148-149; 977 P2d 582 (1999). That no guns were found in Skipp's home further demonstrates the weakness of the inference the prosecution urges.

There is caselaw to the contrary, however. See *Peffer v Stephens*, 880 F3d 256, 271 (CA 6, 2018) (cleaned up) ("When it comes to guns, because we have acknowledged that individuals who own guns keep them at their homes, a suspect's use of a gun in the commission of a crime is sufficient to find a nexus between the gun that was used and the suspect's residence."). Here, the sufficiency of Bowser's affidavit presents a close question. We need not reach a definitive conclusion; even assuming the affidavit failed to support a finding of probable cause, the good-faith exception to the exclusionary rule justifies the admission of the ammunition evidence.

III

The good-faith exception to the exclusionary rule posits that illegally seized evidence need not be excluded if the officers who executed the warrant acted in reasonable, good-faith reliance on its validity. *United States v Leon*, 468 US 897, 919-921; 104 S Ct 3405; 82 L Ed 2d 677 (1984); *People v Goldston*, 470 Mich 523, 525-526; 682 NW2d 479 (2004). "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in

---

[2] There is no record indication that the police arranged to watch or catch Skipp in the act of selling the guns. The warrant was executed shortly after midnight on the following day.

good faith in conducting the search." *Leon*, 428 US at 922 (cleaned up). Whether the police officers acted in good faith is measured by a standard of objective reasonableness. *Id*.

An officer's reliance on a deficient warrant is not in good faith when "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n 23. In *Leon*, the Supreme Court outlined four circumstances in which the good-faith exception does not apply: (1) the magistrate was "misled by information in the affidavit that the affiant either knew or would have known was false" but for his reckless disregard for the truth; (2) "the magistrate wholly abandon[ed] his judicial role;" (3) a police officer relied on an affidavit that was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" or (4) a search warrant is facially deficient such that "the executing officers cannot reasonably presume it to be valid." *Goldston*, 470 Mich at 531 (cleaned up); *People v Hellstrom*, 264 Mich App 187, 197; 690 NW2d 293 (2004).

Skipp argues that three of the exceptions apply here. First, the magistrate was likely misled by the affidavit, Skipp asserts, as the majority of the averments focused on the two gun store break-ins but failed to inculpate Skipp in those crimes. Only after he challenged the affidavit did the prosecution advance an argument that his status as a felon justified the search, Skipp maintains. Thus, the affidavit misled the magistrate into believing that Skipp was involved in the gun store crimes. Second, Bowser knew that the affidavit was "confusing and misleading" and lacked indicia of probable cause. When the officer and the affiant are the same person, Skipp contends, the officer "is invariably aware" of the affidavit's defects and should not be allowed to claim good-faith reliance on the warrant. Third, this warrant was so defective that Bowser and the other officers who executed it could not have reasonably assumed it was valid, as it allowed the police to rummage through Skipp's home in search of evidence related to a gun store robbery yet offered no probable cause to believe that Skipp had been involved in that crime.

Skipp's good-faith challenges primarily focus on the gap between the objects of the search described in the warrant—evidence linking him to two gun store robberies—and the averment that probable cause existed to search his home. We agree that Bowser devoted most of his affidavit to a description of crimes that apparently did not involve Skipp. In our view, he did so not to mislead the magistrate, but to explain how the police came to believe, through the course of the gun store investigations, that Skipp likely possessed firearms. And although probable cause to search Skipp's home was thin at best, reasonable minds could differ regarding whether the evidence presented to the magistrate sufficed to establish that Skipp likely possessed guns in violation of state law. Accordingly, an officer's reliance on the warrant's validity was not unreasonable.

Skipp argues that this case is analogous to *United States v Hodson*, 543 F3d 286, 293 (CA 6, 2008), in which the Sixth Circuit determined that a similar gap between the evidence gathered in support of the warrant and the warrant's reach rendered the good-faith exception inapplicable. There are similarities between this case and *Hodson*. But there are critical differences as well. *Hellstrom*, 264 Mich App 187, decided by this Court, corresponds more

directly to the facts before us, and controls our consideration of the good-faith issue presented.[3] We turn to a discussion of both cases.

The officer's affidavit in *Hodson* described that the defendant had engaged in repeated acts of child molestation. The search warrant, however, sought evidence of the defendant's possession of child pornography. "Notably," the Sixth Circuit observed, "the statement of probable cause contains no information whatsoever with regard to [the defendant's] engaging in any aspect of child pornography, or any basis for believing that individuals who engage in child molestation are likely also to possess child pornography." *Hodson*, 543 F3d at 289. And any inference that people who molest children also likely indulge in viewing child pornography is "weak" at best, and "not self-evident," the Court explained. *Id*. at 290 (cleaned up). Although a reviewing magistrate may make reasonable inferences based on common sense, the Sixth Circuit concluded that "a reasonably well-trained officer" reading the warrant

> would have realized that the search described (for evidence of the crime of child pornography) did not match the probable cause described (that evidence would be found of a different crime, namely, child molestation) and therefore the search was illegal, despite the magistrate's decision to the contrary. We conclude that any "reasonably well trained officer" would certainly have come to that realization if presented with this warrant. [*Id*. at 293.]

The Sixth Circuit made a second point germane to this case. As here, the officer who drafted the affidavit in support of the *Hodson* search warrant was also the officer who executed it. Apparently that officer "had specialized, subjective knowledge" about the connection between child molestation and child pornography. *Id*. But "such subjective knowledge is not sufficient to satisfy a finding of objective good faith," the Sixth Circuit declared. *Id*. In support of this statement, the Court cited *Groh v Ramirez*, 540 US 551, 564-565; 124 S Ct 1284; 157 L Ed 2d 1068 (2004), in which the United States Supreme Court expressed:

> [B]ecause petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid. . . .
>
> No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional. . . .
>
> "[A] warrant may be so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 US, at 923. This is such a case.

We find *Hodson* distinguishable for two reasons. Although the bulk of Bowser's affidavit concerned the gun store robberies, the three final paragraphs established that Skipp

---

[3] We are not bound by the decisions of the Sixth Circuit, although we may consider them persuasive authority. *Abela v GMC*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

likely was a convicted felon and that he had offered to sell "new" guns to an informant. Missing from the affidavit was a specific averment that Skipp was ineligible to possess firearms due to a felony conviction. That inference was a reasonable one, however, in contrast with the "weak" and attenuated inference at the heart of *Hodson*.

Second, the language in *Hodson* suggesting that the signer of the affidavit may not reasonably rely on a magistrate's decision to issue a warrant refers to situations in which the warrant is *facially* invalid. A facially invalid warrant fails "to particularize the place to be searched or the things to be seized" so obviously "that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 US at 923. The warrant for Skipp's home was not facially invalid as it provided the officers with a detailed description of the place to be searched and the items to be seized. In contrast, see *Groh*, 540 US at 558, in which the United States Supreme Court found that "the warrant did not describe the items to be seized *at all*."

We find more apposite guidance in *Hellstrom*, 264 Mich App 187, a case factually similar to *Hodson*. In *Hellstrom*, the investigating detective's affidavit averred that the defendant was the subject of two criminal sexual conduct complaints alleging that the assaults occurred in the defendant's home, and that based on the detective's experience "investigating sexual assaults it is known that this activity may also lead to the use of pornography for sexual gratification of the suspect." *Id*. at 191. Based on this allegation, the magistrate and the trial court found a "sufficient nexus" between the affidavit, the evidence, and the area to be searched, including the defendant's computers. *Id*. The *Hellstrom* majority apparently accepted that the detective's opinion regarding the "nexus" between sexual assault and pornography was inadequate to supply probable cause for the search of the defendant's computers. Without explaining precisely why it determined the affidavit to have been deficient, the majority elected to decide the case based on the good-faith exception to the exclusionary rule. *Id*. at 193. Applying *Leon* and *Goldston*, the majority held that the affidavit was not "so lacking in indicia of probable cause that the officers" unjustifiably believed that probable cause supported it. *Id*. at 199 (cleaned up). "Given the affiant's knowledge that pedophiles generally possess pornographic images for sexual gratification," the majority explained, "it was entirely reasonable to believe that evidence of a crime would be found in defendant's home, whether it be images taken of the complainants without their knowledge or possession of other material that would constitute child pornography." *Id*.

Here, too, it was reasonable for Bowser to believe that probable cause existed to search Skipp's home.[4] Bowser's investigation of the gun store robberies, as detailed in the affidavit, led

---

[4] We reject Skipp's argument that simply because Bowser personally executed the search warrant, he was "invariably aware" of any probable cause deficits. See *Shawn Adams*, 485 Mich 1039:

> Moreover, the Court of Appeals further erred by relying on *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984), to rule that the good-faith exception to an improperly issued search warrant could not apply in this case because the police officer who supplied the underlying affidavit for the search

him to suspect that Skipp was involved. Other officers then set up an opportunity for a wired informant to engage in a conversation with Skipp intended to elicit evidence linking Skipp to the gun store crimes. Skipp's offer to sell guns to the informant did not *directly* link Skipp to the robberies, but it did supply the police with evidence of a separate crime: possession of a firearm by a convicted felon. Again, see *Hellstrom*, 264 Mich App 199-200 (cleaned up)[5]: "Michigan's probable-cause standard relates to whether contraband or evidence of a crime will be found in a particular place. It does not require that the evidence sought be particular to the specific offense a defendant is alleged to have committed."

Although we question whether the affidavit established probable cause to believe that guns would be found in Skipp's home, our uncertainty underscores that Skipp has not met his burden of showing that Bowser's affidavit was "so lacking in indicia of probable cause" that it was objectively unreasonable to believe in the warrant's validity. Nor has Skipp demonstrated that any facts alleged in the affidavit were false or intentionally misleading.

In *Leon*, 468 US at 923 n 23, the United States Supreme Court explained that the proper test of an officer's good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Bowser presented a magistrate with an affidavit detailing how he had come to suspect that Skipp was illegally in possession of firearms. Although the affidavit may not have included enough information to support a "fair probability" that the firearms were stored in Skipp's home, the affidavit was not "so lacking in indicia of probable cause" as to place Bowser on notice that probable cause for the search had not been established. *Id*.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

---

warrant also executed the warrant. Regardless of whether there was probable cause for the issuance of the search warrant of the defendant's premises in this case, there is no evidence that the officer provided an affidavit so lacking in indicia of probable cause as to render his subsequent official belief in its existence entirely unreasonable. *Id*. at 919-921. The evidence shows that the officer executed the warrant with a good-faith belief that it was properly issued.

[5] Skipp correctly points out that the affidavit fails to specifically aver that he was unable to legally possess firearms. We find this inference to be reasonable, however, based on the fact that the police verified that Skipp had been incarcerated in a Michigan prison. While it is possible that Skipp regained his firearm rights, it is not unreasonable to conclude that probably he had not done so.