NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0296n.06

No. 19-3928

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 28, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff–Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| JOSHUA NOVAK, | ) | |
| | ) | **OPINION** |
| **Defendant–Appellant.** | ) | |

BEFORE: MOORE, SUTTON, and WHITE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** In late February 2019, Elyria city police officers raided the home of a local drug dealer named Joshua Novak, warrant in hand, and therein discovered several grams of heroin and a loaded .25-caliber handgun. Arrest and federal prosecution followed. Novak moved to suppress the heroin and the handgun, arguing that because the officers did not have probable cause to believe illicit items would be found inside his home the search warrant was invalid. The district court denied Novak's motion, saying probable cause did exist. Novak now asks us to reverse that ruling. We decline the invitation and **AFFIRM**, albeit on different grounds than those offered by the district court.

## I. BACKGROUND

In January 2019, a trusted confidential informant ("CI") "advised" Elyria city police that a man known as T.Y. "reside[d] on Tedman Court"—a street located within the Wilkes Villa low-rise apartment complex—and "distribute[d] narcotics from that residence." R.17-1 (Search

Warrant Aff.) (Page ID #82, 84); *see also id.* at Page ID #89 (aerial photo of Tedman Court). This tip piqued the interest of officers in the city's narcotics unit and so they began investigating further.

As a first step, on February 12, 2019, the officers asked the CI to conduct a "controlled drug buy" from T.Y., meaning that the officers would give the CI money to purchase the drugs and observe from a distance, and the CI would wear a wire and video recording device during the transaction. *Id.* at Page ID #82. The CI agreed and made a recorded call to T.Y. *Id.* Thereafter, the CI purchased less than one gram of crack-cocaine from T.Y. in a hospital parking lot while sitting in the backseat of T.Y.'s Ford Taurus. T.Y. and the CI then drove to a different parking lot, where T.Y. consummated another drug sale. After completing that transaction, T.Y. returned the CI to the hospital lot and drove off. The officers promptly confirmed that that the drug T.Y. sold the CI tested positive for cocaine. And, perhaps more importantly, upon reviewing the CI's video recording, the officers realized "immediately" that "T.Y." was in fact Joshua Novak, a local gang member with whom the officers were familiar. *Id.* at Page ID #83. The officers then confirmed that Novak had *some* connection to Tedman Court, because, "several hours after" the transaction, they spotted Novak "turning off of Tedman Ct.," in the Taurus. *Id.*

Not content with the evidence gleaned from this first controlled buy, on February 15, 2019 the officers again asked the CI to buy drugs from Novak, which the CI again agreed to do. *Id.* at Page ID #84. This time, though, the officers endeavored to surveil the Tedman Court residence from the transaction's outset. So, with the officers listening in, the CI called Novak and asked to purchase a hundred dollars' worth of crack-cocaine and heroin. Novak replied that he was "inside [the] Wilkes Villa Apartment complex," that he "only had heroin on him," and that, if the CI wanted crack-cocaine, he (Novak) would need to pick it up from elsewhere. *Id.* The CI replied

that he wanted the heroin straightaway, and that he would meet Novak at a nearby mall parking lot to buy it. The officers then observed the Taurus—which was parked near the Tedman Court residence—leave "the area of Tedman Ct. and arrive[] in the area of [the mall] shortly after." *Id*. Once there, the officers confirmed not only that Novak was driving the Taurus, but also that a "known drug trafficker" named Christopher Howse was riding with him.[1] *Id*. Then, just as in the prior controlled buy, the CI entered the car and bought the drugs from Novak, which the officers subsequently confirmed to contain fentanyl.

After that, Novak and Howse drove to Howse's girlfriend's house—in a different part of town—to cook some crack, while the CI waited elsewhere. A short time later, officers observed Novak leave Howse's girlfriend's house in the Taurus and drive to meet the CI at a restaurant parking lot. Once there, Novak sold the CI less than one gram of a substance that the officers again confirmed to contain crack cocaine.

The officers continued surveilling the Tedman Court residence in the days thereafter. And while doing so, the officers observed Novak exit the residence, get into his Taurus (which was parked nearby), and then re-enter the residence upon his return. *Id*. at Page ID #86.

The officers compiled their investigative efforts into an affidavit and, on February 19, 2019, requested a search warrant for the Tedman Court residence (and for the Taurus), asserting that they had probable cause to believe evidence of drug trafficking would be found in both locations.[2] The state common pleas judge agreed and approved the warrant that day. Two days later, the officers executed the warrant. And, once inside the residence, the officers discovered

---

[1]It is not clear when Howse got into the vehicle.

[2]The officers also included in their affidavit a request to search Howse's girlfriend's residence.

Novak, 6.86 grams of a heroin and fentanyl mixture, a digital scale with white residue, and a loaded .25-caliber handgun, among other items.[3] R.25 (Presentencing Investigation Rep.) (Page ID #166). The officers also found a gram of cocaine in the Taurus, which was parked outside. *Id.*

Federal prosecutors subsequently indicted Novak on various drug trafficking and felon-in-possession-of-a-firearm charges. Novak moved to suppress the evidence collected from the residence (but not the Taurus), arguing that the officers lacked probable cause to believe evidence of drug trafficking would be found there. After the district court denied Novak's motion, Novak entered a conditional guilty plea. The district court then sentenced Novak to 151 months in prison. This appeal followed.

## II. DISCUSSION

We review for clear error the district court's findings of fact in connection with a motion to suppress, whereas we evaluate its ultimate legal conclusion de novo. *United States v. Crumpton*, 824 F.3d 593, 615 (6th Cir. 2016). "[W]hen judging the sufficiency of an affidavit to establish probable cause in support of a search warrant," however, "we accord the magistrate's determination great deference." *Id.* (quotation omitted).

Before entering a person's home or property, and absent certain exceptional circumstances not at issue here, the police must obtain a warrant based "upon *probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV (emphasis added). This protection exists to safeguard the people's right to "retreat into the home and 'there be free from unreasonable governmental intrusion.'"

---

[3]It turned out that the residence belonged to Novak's girlfriend, and that Novak had been staying with her. *See* R.42 (Sent. Hr'g Tr.) (Page ID #339); R.25 (Presentencing Investigation Rep.) (Page ID #166).

4

*United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *Kyllo v. United States*, 533 U.S. 27, 31 (2001)).  And, in recognition of this right's importance, the Supreme Court has long held that evidence collected in violation of the Fourth Amendment may be excluded from the criminal trial of the victim of the unlawful search.  *See, e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 648, 651 (1961) (deeming this "the exclusionary rule," and describing it as a "deterrent safeguard").

Because being searched is different than being convicted, and because search warrants "are normally drafted by nonlawyers in the midst and haste of a criminal investigation," however, "probable cause" presents a less demanding standard than "proof beyond a reasonable doubt" or "preponderance of the evidence."  *Illinois v. Gates*, 462 U.S. 213, 235–36 (1983) (quotation omitted).  Rather, probable cause exists if there is a "fair probability," based upon "the totality of the circumstances," that "evidence of a crime will be located on the premises of the proposed search."  *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (quotations and citations omitted).  This is a "practical," "common-sensical" inquiry.  *Florida v. Harris*, 568 U.S. 237, 244 (2013).

Moreover, even if the police execute a search warrant based on something less than probable cause, evidence acquired as a result of that search is not necessarily excludable at trial. Rather, under the "good faith" exception to suppression set forth in *United States v. Leon*, 468 U.S. 897 (1984), such evidence is excludable only

> (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid.

*United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006). This broad exception to the exclusionary rule exists because "the judge issuing a warrant—not the officer applying for one—has responsibility for determining whether probable cause exists." *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018). There is therefore "little deterrent effect" to applying the exclusionary rule to law-enforcement officers who merely applied for a warrant in good faith, and who otherwise behaved in an "objectively reasonable" manner. *Id.*; *see also United States v. Christian*, 925 F.3d 305, 312–13 (6th Cir. 2019) (en banc) (emphasizing the breadth of the exception).

Here, Novak argues that because the officers did not attest that they saw Novak transport drugs to or from the Tedman Court *residence*—rather than to or from Tedman Court/Wilkes Villa more generally—the officers failed to establish a nexus between the residence and Novak's drug trafficking activity and therefore lacked probable cause to believe drugs or other illicit evidence would be found therein. *Cf.* R.17-1 (Search Warrant Aff.) (Page ID #83) (stating that "[s]everal hours after" the first controlled buy the officers spotted Novak "turning off of Tedman Ct."); *id.* at Page ID #84 (stating that just prior to the second controlled buy Novak said he was "inside Wilkes Villa Apartment complex" and that the officers then saw the Taurus leave "the area of Tedman Ct."). This matters, Novak continues, because we have held that the Fourth Amendment does not permit officers to search a drug dealer's home just because that person is a drug dealer; rather, police must provide "reliable evidence connecting the known drug dealer's ongoing criminal activity *to the residence* [to be searched]." *Brown*, 828 F.3d at 383 (emphasis added); *see, e.g.*, *United States v. Coleman*, 923 F.3d 450, 457–58 (6th Cir. 2019) (probable cause existed where "agents had conducted three controlled buys of cocaine from [defendant] and observed him drive

*directly from* his condo to the site of the most recent buy . . .") (emphasis added); *United States v. Jenkins*, 743 F. App'x 636, 644 (6th Cir. 2018) (same). Novak further argues that the good-faith exception to suppression cannot save the warrant, citing *Brown* and *McPhearson*, two of our more recent cases declining to apply the exception.

We need not decide whether the district court erred in finding probable cause because, in either event, it is plain that the good-faith exception to suppression applies, and that *Brown* and *McPhearson* are inapposite.[4] *See United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005) ("We need not resolve the question [whether the affidavit was sufficient] . . . because . . . the denial of the motion to suppress was proper under the good-faith rule of *United States v. Leon* . . . ." (citation omitted)). Most notably, although the officer's affidavit arguably failed to connect with *particularity* the Tedman Court residence to Novak's criminal activities, the officers conducted a thorough investigation into Novak—including physical surveillance of his residence and multiple controlled buys—which generally corroborated the CI's initiating tip, *see* R.17-1 (Search Warrant Aff.) (Page ID #82) ("[The CI] advised that 'T.Y.' resides on Tedman Court . . . and distributes narcotics from that residence"), and which in turn gave the officers reason to believe a search of the residence would yield drugs and other illicit items. *Compare Brown*, 828 F.3d at 385 (declining to apply exception because the officer's affidavit was "devoid of facts connecting [defendant's] residence to [defendant's] alleged drug dealing activity" and "did not indicate . . . that the police ever surveilled [defendant's] home or otherwise attempted any investigation regarding whether the residence was linked to the alleged drug conspiracy"). Most notably, on February 15, Novak told

---

[4]Although the district court relied on probable cause alone, the government raised in that court the good-faith exception and does so again here. *See* R.17 (Gov't Opp. Br.) (Page ID #75–76); Appellee Br. at 26–28.

the CI that he had heroin in his possession while he was at the Wilkes Villa apartment complex. Police then observed Novak leave Tedman Court to sell the heroin to the CI.

Nor was the affidavit offered in support of the warrant bare bones, such that a reasonable officer could not have presumed it valid. To the contrary, the affidavit detailed events that occurred over several days of surveillance, including three controlled buys to a reliable informant and officers' observations of Novak going to and from the Tedman Court residence—on at least one occasion to make a drug sale. *Compare McPhearson*, 469 F.3d at 526 ("The only connection in the affidavit between [defendant's residence] and drug trafficking was that [] police arrested [defendant] at his residence [on a non-drug charge] and found [6.9 grams of] crack cocaine in his pocket"; "[t]he affidavit did not allege that [defendant] was involved in drug dealing, that hallmarks of drug dealing had been witnessed at his home, such as heavy traffic to and from the residence, or that the investigating officers' experience in narcotics investigation suggested to them that 6.9 grams of crack cocaine was a quantity for resale"). And there certainly is no indication in the record here that the officers lied to obtain the warrant, or that the magistrate "wholly abandoned his . . . judicial role" in approving it. *Id*. at 525. The good-faith exception therefore applies.

### III. CONCLUSION

For these reasons, we **AFFIRM** the district court's denial of Novak's motion to suppress.